UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ROBIN METZLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 4:11-cv-00101-TWP-TAB |
| KENTUCKIANA MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON UNOPPOSED MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Kentuckiana Medical Center's ("Kentuckiana") Motion for Summary Judgment (Dkt. 28) and Motion for Court to Take Judicial Notice and Issue Order (Dkt. 32). Plaintiff Robin Metzler filed this lawsuit under 42 U.S.C. § 2000e(k), or the Pregnancy Discrimination Act, the Indiana Civil Rights Act, and the Kentucky Civil Rights Act. However, Ms. Metzler has not opposed Kentuckiana's motion, though she has moved for leave to respond (Dkt. 35). For the following reasons, Kentuckiana's Motion for Summary Judgment (Dkt. 28) is **GRANTED**.

### I. BACKGROUND

Kentuckiana is a privately owned hospital with 174 employees. Ms. Metzler began working as a registered nurse in Kentuckiana's Transitional Care Unit ("TCU") in April 2010. She was an at-will employee and agreed to the following job description:

> Job requires physical ability for long term standing, occasional sitting, crouching, kneeling, frequent walking, reach with reaching above head and below waist. Job risks include exposure to blood and body fluids (high), lifting of 30-75 pounds, and exposure to infectious disease.

Dkt. 30-3 at 1.  Of particular note, TCU nurses were required to have the ability to lift 30 to 75 pounds, in order to properly assist patients.

In late April 2010, Ms. Metzler became pregnant.  A short time later, she was placed on a lifting restriction by her doctor.  Kentuckiana requested and on May 11, 2010, Ms. Metzler provided Kentuckiana with a doctor's note restricting her from lifting over 30 pounds.  Thereafter, Human Resources Manager Donna Borders and Nurse Manager Tracy Book, met with Ms. Metzler.  Ms. Borders and Ms. Book informed Ms. Metzler that because she was unable to fulfill her job description, her employment was terminated.  Additionally, Ms. Metzler was informed that Kentuckiana had no open positions available that did not require lifting 30 to 75 pounds.  On May 13, 2010 Ms. Book completed the KMC Employment and Status Change Sheet for Robin Metzler, which indicated Ms. Metzler was terminated because of "lifting restrictions until 12/7 and recovery period[,] unable to perform essential functions of the positions."  Dkt. 30-6 at 1.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."  *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations,

that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III.  DISCUSSION

As part of Title VII of the Civil Rights Act, the Pregnancy Discrimination Act, "brought discrimination based on pregnancy within a woman's protections against sex discrimination." 42 U.S.C. § 2000e(k); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 722 (7th Cir. 1998). "While the PDA does not impose an affirmative duty on employers to offer maternity leave or to take other measures to assist pregnant employees, it does require that the employer treat the employee as well as it would have if she were not pregnant." *Kennedy*, 140 F.3d at 722. As such, it requires that pregnant women shall be treated the same "as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

It is well-established that a plaintiff may prove discrimination under Title VII in one of two ways: either through direct evidence, or indirectly through the burden-shifting mechanism of *McDonnell Douglas*. *See Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000) (citation omitted). Under the direct method, a plaintiff may proffer direct or circumstantial evidence to prove discrimination. Direct evidence establishes "the fact in question without reliance on inference or presumption." *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (citation

3

omitted).  A plaintiff may also prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citation and internal quotations omitted).  "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Id*. (citation and internal quotations omitted).

Alternatively, a plaintiff can use the indirect method of proof, which consists of three basic steps: (1) a plaintiff must establish a prima facie case of discrimination based on a protected class, (2) if he does so, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse action, and (3) the plaintiff must then come forward and show the stated reason is pretextual.  *See Henderson*, 207 F.3d at 376.

Kentuckiana notes that Indiana and Kentucky utilize the *McDonnell Douglas* standard for analyzing discrimination claims.  *See Ind. Civil Rights Comm'n v. City of Muncie*, 459 N.E.2d 411, 418 (Ind. Ct. App. 1984); *Tiller v. Univ. of Ky.*, 55 S.W.3d 846, 849 (Ky. Ct. App. 2001). Accordingly, the Court will not address the state law claims with a separate analysis.

**A.  The Direct Method**

Kentuckiana argues that Ms. Metzler cannot show discrimination through direct or circumstantial evidence.  The Court agrees.  First, there is no evidence that Ms. Book or Ms. Border made any statement that can be construed as discriminatory toward Ms. Metzler.  Ms. Metzler secretly recorded her meeting with Ms. Book and Ms. Border, and the Court has reviewed the transcript.  *See* Dkt. 30-5.  No discriminatory statements were communicated during the meeting and Ms. Metzler has not alleged any other direct evidence.

Second, Ms. Metzler has not alleged any circumstantial evidence that supports an inference of discrimination.  There are three broad categories of circumstantial evidence,

including: "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," "evidence showing that the employer systematically treated other, similarly situated, nonpregnant employees better," and "evidence that the plaintiff suffered an adverse employment action and that the employer's justification is pretextual." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011) (internal quotations and citations omitted).

First, although Ms. Metzler was terminated within a week or two after Kentuckiana learned of her pregnancy, the timing does not rise to a suspicious level considering Ms. Metzler's termination coincided with Kentuckiana receiving her doctor-ordered restrictions. There is no other evidence implicating the first category. Second, during the meeting between Ms. Metzler, Ms. Book, and Ms. Border, Ms. Metzler asked about Shannon Fox, a nurse who had doctor-ordered restrictions after a knee injury.[1] Rather than terminate Ms. Fox, Kentuckiana was able to move her into an open secretary position for the duration of her restrictions. However, it is undisputed that when Ms. Metzler submitted her lifting restrictions, Kentuckiana did not have alternative open positions to which Ms. Metzler could be moved. There is no evidence that other similarly situated employees were systematically given accommodations while only Ms. Metzler was terminated. Third, there is no evidence that the reason given by Kentuckiana was pretextual. Ms. Metzler argues that because Kentuckiana failed to investigate the duration of her restrictions, or discuss the practicalities of the restrictions that its reason for terminating her were pretextual. The Court cannot agree. The undisputed facts establish that Ms. Metzler was required by her job

---

[1] Another nurse, Elizabeth Gilkey, was also discussed. Ms. Gilkey was pregnant at the time Ms. Metzler was terminated. However, Ms. Gilkey did not have any doctor-ordered restrictions on her ability to lift or other requirements of the job description. Ms. Gilkey is not a similarly situated person for purposes of the Court's analysis, which requires such person to be "nonpregnant" or outside of the protected class.

to be able to lift 30 to 75 pounds. Her doctor restricted her from lifting over 30 pounds, and as a result, she was unable to fulfill her job description.

### B. The Indirect Method

For purposes of Ms. Metzler's pregnancy discrimination claim, she must show that: "(1) she was pregnant and her employer knew she was pregnant; (2) she was performing her job duties satisfactorily; (3) she was terminated; and (4) similarly situated, nonpregnant employees were treated more favorably." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 550 (7th Cir. 2011).

Kentuckiana concedes that Ms. Metzler satisfies the first and third prongs of a prima facie case of discrimination, that is, she is part of a protected group and she suffered an adverse employment action. However, Kentuckiana contends that Ms. Metzler was not performing to its legitimate expectations, nor were others similarly situated, but not in the protected class, treated more favorably. Kentuckiana argues that because Ms. Metzler was restricted from lifting over 30 pounds, she was not performing to its legitimate expectations, which requires lifting as part of proper patient care. Ms. Metzler argues that she was able to perform her job, but she cannot deny the lifting requirement and that she was restricted from lifting over 30 pounds. The Court agrees with Kentuckiana that because Ms. Metzler was unable to perform a required part of her job, she was unable to meet her employer's expectations. Additionally, as discussed above, the only alleged similarly situated person identified is Ms. Fox. Ms. Metzler offers only superficial argument on this point. She references Ms. Gilkey and Ms. Fox, and an employer's duty to allow disabled employees modifications. Ms. Fox was given a secretary position that had not been filled, and she was allowed to temporarily fill that position while recovering. When Ms. Metzler turned in her lifting restriction, Ms. Borders assessed Kentuckiana's open positions, but

6

none were available.  There is no other evidence that Kentuckiana made special arrangements for similarly situation nonpregnant employees.  Therefore, Ms. Metzler has not established a prima facie case of discrimination.

## IV.  CONCLUSION

For the reasons set forth in this Entry, Kentuckiana's Motion for Summary Judgment (Dkt. 28) is **GRANTED**.

SO ORDERED.

Date: 04/13/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Laurie Goetz Kemp
KIGHTLINGER & GRAY, LLP-New Albany
lkemp@k-glaw.com

Scott Caldwell Wilhoit
WARD HOCKER & THORNTON, PLLC
swilhoit@whtlaw.com